IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

CHRISTOPHER LOONEY, individually and
on behalf of all others similarly situated,
and JASON NELSON                                                              PLAINTIFFS

v.                          Case No. 4:21-cv-00165-KGB

WECO, INC., and GARY WAINWRIGHT                                        DEFENDANTS

## ORDER

Before the Court is separate plaintiff Christopher Looney's motion for conditional certification, for approval and distribution of notice, and for disclosure of contact information (Dkt. No. 11). Defendants Weco, Inc. ("Weco"), and Gary Wainwright responded in opposition to the motion (Dkt. No, 13), and Mr. Looney replied (Dkt. No. 14). For the following reasons, the Court grants, in part, and denies, in part, Mr. Looney's motion for conditional certification, for approval and distribution of notice, and for disclosure of contact information (Dkt. No. 11).

**I.    Background**

Plaintiffs Christopher Looney, individually and on behalf of all others similarly situated, and Jason Nelson bring this action against Weco and Mr. Wainwright, alleging overtime violations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Arkansas Minimum Wage Act ("AMWA"), Ark. Code Ann. § 11-4-201 *et seq.*, as well as violations of the Families First Coronavirus Response Act, Division E–Emergency Paid Sick Leave Act ("FFRCA"), 29 U.S.C. § 2601, *et seq.* (Dkt. No. 1).

Plaintiffs allege that Weco is a corporation that sells, services, installs, and inspects, automotive equipment and that Mr. Wainwright owns and operates Weco (Dkt. No. 1, ¶¶ 9, 14–16, 22). According to plaintiffs, Mr. Looney was employed by Weco as an hourly-paid field

technician within the three years preceding the filing of this action (*Id.*, ¶ 25).[1] In the instant motion, Mr. Looney proposes the following the collective: "All Hourly Field Technicians employed by Weco, Inc., and Gary Wainwright, at any time since March 1, 2018" (Dkt. No. 12 at 7–9**)**, alleging that members of this class were entitled to the same protections under the FLSA that he was and that they were similarly denied those protections by the implementation of a common policy enacted by defendants.

## II.  Governing Law

Under the FLSA:

> An action to recover the liability prescribed . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

District courts in the Eighth Circuit, including this one, utilize a two-step approach to determine whether certification of a collective action is appropriate. *See*, *e.g.*, *McChesney v. Holtger Bros.*, Case No. 4:17-cv-824-KGB, 2019 WL 118408, at *2 (E.D. Ark. Jan. 7, 2019); *Cruthis v. Vision's*, Case No. 4:12-cv-244-KGB, 2013 WL 4028523, at *1 (E.D. Ark. Aug. 7, 2013); *Watson v. Surf-Frac Wellhead Equip. Co.*, Case No. 4:11-cv-843-KGB, 2012 WL 5185869, at *1 (E.D. Ark. Oct. 18, 2012). Under this approach, a district court first determines whether the putative collective action members are similarly situated (*i.e.*, whether they were subject to a

---

[1] Mr. Looney alleges in his complaint that he was employed by Weco from September 2019 to the present (Dkt. No. 1, ¶ 25). In his affidavit, he asserts that he was employed "from September 2019 to February 2019" (Dkt. No. 11-7, ¶ 3). Defendants acknowledge his employment during the relevant period and state that Mr. Looney was employed from September 2019 until on or about February 25, 2021 (Dkt. No. 13, at 2 n.1).

common employment policy or plan), and then, at the conclusion of discovery, the district court provides an opportunity for the defendant to move to decertify the collective action, pointing to a more developed record to support its contention that the opt-in plaintiffs are not, in fact, similarly situated to the named plaintiffs. *See Smith v. Frac Tech Servs., Ltd.*, Case No. 4:09-cv-679-JLH, 2009 WL 4251017, at *1 (E.D. Ark. Nov. 24, 2009).

"To establish that conditional certification is appropriate, the plaintiffs must provide 'some factual basis from which the court can determine if similarly situated potential plaintiffs exist.'" *Robinson v. Tyson Foods, Inc.*, 254 F.R.D. 97, 99 (S.D. Iowa 2008) (quoting *Dietrich v. Liberty Square, L.L.C.*, 230 F.R.D. 574, 577 (N.D. Iowa 2005)). Plaintiffs' burden at the "notice" stage is "lenient" and "requires only a modest factual showing; it does not require the plaintiff[s] and the potential class members to show that they are identically situated." *Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937, 941 (W.D. Ark. 2007) (citing *Kautsch v. Premier Commc'ns*, 504 F. Supp. 2d 685, 689–90 (W.D. Mo. 2007)). Still, "'more than mere allegations' are required" for plaintiffs to carry their burden. *Tegtmeier v. PJ Iowa, L.C.*, 208 F. Supp. 3d 1012, 1019 (S.D. Iowa 2016) (quoting *Robinson*, 254 F.R.D. at 99).

"Typically, district courts will make the determination of whether to conditionally certify a class based solely on the affidavits presented by the plaintiffs." *Huang v. Gateway Hotel Holdings*, 248 F.R.D. 225, 227 (E.D. Mo. 2008) (citing *Rappaport v. Embarq Mgmt. Co.*, Case No. 607CV468ORL19DAB, 2007 WL 4482581, at *4 (M.D. Fla. Dec. 18, 2007)). Factors to be considered include: (1) whether plaintiffs all held the same job titles; (2) whether plaintiffs worked in different geographical locations; (3) the extent to which the claimed wage-and-hour violations occurred during different time periods and by different decision makers; and (4) whether plaintiffs all alleged similar, though not identical, wage-and-hour violations. *See McChesney*, 2019 WL

118408, at *2 (citing *Stone v. First Union Corp.*, 203 F.R.D. 532, 542 (S.D. Fla. 2001)). "The Court does not need to determine whether class members are *actually* similarly situated until the 'merits stage' of the litigation, when defendants typically move to decertify the class." *Tinsley v. Covenant Care Servs., L.L.C.*, Case No. 1:14-cv-26 ACL, 2015 WL 1433988, at *1 (E.D. Mo. Mar. 27, 2015) (emphasis in original) (citing *Littlefield v. Dealer Warranty Servs., L.L.C.*, 679 F. Supp. 2d 1014, 1017 (E.D. Mo. 2010)). At this stage, the district court also does not "make any credibility determinations or findings of fact with respect to contrary evidence presented by the parties." *Israsena v. Chalak M&M AR1 LLC*, Case No. 4:15-cv-38 JLH, 2015 WL 13648567, at *2 (E.D. Ark. Oct. 14, 2015) (quoting *Chin v. Tile Shop, LLC*, 57 F. Supp. 3d 1075, 1083 (D. Minn. 2014)).

In its opposition to Mr. Looney's motion, defendants urge the Court to depart from longstanding Eastern District of Arkansas caselaw and adopt a new inquiry set forth in a Fifth Circuit opinion, *Swales v. KLLM Transport Services., L.L.C.*, 985 F.3d 430 (5th Cir. 2021) (Dkt. No. 13, at 6). *Swales* rejected the two-stage certification inquiry and advised district courts to "rigorously enforce" the similarity requirement at the outset of the litigation. 985 F.3d at 443. Defendants have not presented any persuasive reason why this Court should deviate from the widely used two-stage approach. The Court declines to apply *Swales*, as have other district courts in the Eighth Circuit. *See, e.g., Murphy v. Labor Source, L.L.C.*, Case No. 19-cv-1929, 2022 WL 378142, at *11 n.4 (D. Minn. Feb. 8, 2022); *Rodriguez v. Cutchall*, Case No. 4:20-cv-3106, 2021 WL 5911322, at *2 (D. Neb. Nov. 16, 2021); *McCoy v. Elkhart Prods. Corp.*, Case No. 5:20-cv-05176, 2021 WL 510626, at *2 (W.D. Ark. Feb. 11, 2021).

### III. Discussion

#### A. FLSA Conditional Certification

Based upon language in his proposed notice, Mr. Looney seeks conditional certification for the following collective: All Hourly Field Technicians employed by Weco, Inc., and Gary Wainwright, at any time since March 1, 2018 (Dkt. No. 12 at 7–9). In support of the instant motion, Mr. Looney offers his own declaration (Dkt. No. 11-7).

In his declaration, Mr. Looney states that he was employed by Weco during the relevant period (*Id.*, ¶ 3). According to Mr. Looney, Weco sells, services, installs, and inspects automotive equipment; and during his time with the company, Mr. Looney was employed as an hourly-paid field technician (*Id.*, ¶ 4–5). The primary duty of Mr. Looney and the other field technicians was to service automotive equipment, a fact known by Mr. Looney because of his extensive work alongside and communications with other field technicians employed by Weco (*Id.*, ¶¶ 6–7). He asserts that both he and other field technicians were only paid for time spent servicing automotive equipment, not for time spent driving between jobs, ordering parts, or other administrative duties; and that this was a policy conveyed to the technicians by the Defendants (*Id.*, ¶¶ 9, 14). Mr. Looney estimates that he worked between 60 and 70 hours per week but was paid for less than half of that time, and he also asserts understanding that other Weco technicians were subjected to similar schedules and worked similar hours. Mr. Looney bases this allegation on conversations with other technicians and administrative assistants, as well as the receipt of "emails from Gary Wainwright to all field technicians discussing aspects of pay, pay policy, and job duties, including certain emails where he would respond to individual complaints about pay by replying to all field technicians to address the issue" (*Id.*, ¶¶ 8, 10). Mr. Looney avers that he knows other field technicians were similarly paid and only paid for hours actually servicing automotive equipment

5

because he "discussed pay and hours worked each week with other field technicians, and other field technicians' complaints regarding the issue were made known to all field technicians by Gary Wainwright." (*Id.*, ¶ 9).

Mr. Looney states that all field technicians tracked their total time working on the Weco time tracking app, clocking in and out on their phones, but also that they also used the app to log time spent performing actual service work. Additionally, he asserts that the time records from the app should show all or almost all of the hours worked by Mr. Looney and other field technicians (*Id.*, ¶¶ 11, 12). According to Mr. Looney, defendants had knowledge of his total hours worked, yet all paystubs he received indicated that he had worked exactly 40 hours. He asserts that, after complaining about this disparity, his paystubs stopped listing the hours worked. Instead, after his complaint, he maintains that the amount of pay he received was listed as "commission," with no relation to the number of hours worked during the relevant pay period (*Id.*, ¶13).

Mr. Looney also alleges that defendants told him and other field technicians that they "would not be paid for time spent driving or doing anything other than actually performing repairs or services for customers" (*Id.*, ¶14). Furthermore, Mr. Looney argues that based on his personal experience and conversations with other technicians, it was commonplace for technicians not to be paid for time spent performing certain jobs, not to be paid at all for jobs if they were close to where the technician was already working, and for technicians to be ordered to purchase personally parts for repairs without ever being reimbursed for the costs of those parts (*Id.*, ¶¶ 15–17). Mr. Looney and other field technicians also were allegedly compensated for mileage driven only when 30 miles or more from their residences, resulting in a majority of many technicians' work mileages going unreimbursed (*Id.*, ¶ 18). Based on his conversations with other technicians, Mr. Looney states that others would want to join this lawsuit if notice were issued and if they were aware of

this suit, and Mr. Looney states that the number of hourly-paid technicians employed by defendants over the last three years exceeds 30 people (*Id.*, ¶¶ 19–20).

Defendants argue that Mr. Looney's declaration fails to show other similarly situated potential plaintiffs exist, arguing that Mr. Looney has not convincingly asserted that "the plaintiff and putative collective members were victims of a common decision, policy, or plan of the employer that affected all class members in a like manner" (Dkt. No. 13, at 7).  According to defendants, Mr. Looney is required to bring forth stronger evidence than a declaration of personal recollections of conversations with other technicians which lead him to believe that such a policy had been applied to all technicians.  This contention is not supported by the historical application of the two-stage certification inquiry used by district courts in the Eighth Circuit and elsewhere.

Based on the inquiry used by district courts in the Eighth Circuit, Mr. Looney's declaration need only be based on personal knowledge, *Galigher v. NEO Cabinet, Inc.*, Case No. 2:20-cv-2140, 2021 WL 83411, at *2 (W.D. Ark. Jan. 11, 2021), and the decision to certify a plaintiff's proposed collective may be based solely on such a declaration so long as the personal knowledge asserted presents a "colorable basis for his claim that the putative class members were the victims of a single decision, policy, or plan." *Schmaltz v. O'Reilly Auto. Stores, Inc.*, Case No. 4:12-cv-1056-JAR, 2013 WL 943752, at *5 (E.D. Mo. Mar. 11, 2013).

In his declaration, Mr. Looney states that, based on his conversations and experiences working with other field technicians and employees of Weco, he believes all technicians had analogous duties and schedules and were subjected to similarly analogous payment, mileage, and reimbursement policies (Dkt. No. 11-7, ¶¶ 7, 9–11, 14–18).  Defendants state that, even if the Court were to accept the personal knowledge of Mr. Looney as grounds to certify a collective, this collective should be limited to those technicians Mr. Looney spoke with directly, all of whom were

employed in Arkansas, and that the certification of a national collective would be inappropriate, as Mr. Looney never developed first-hand knowledge of the day-to-day experiences of a majority of Weco's employees. Defendants argue that Mr. Looney's assertion that the relevant policies had been enacted on a company-wide basis are speculative, vague, and conclusory, based not on any of Mr. Looney's personal knowledge or experience, as he only ever worked within the state of Arkansas and only spoke to technicians operating within the state. Resultingly, defendants argue that the Court should refuse to certify a collective comprising of all hourly-paid field technicians operating throughout the country.

In prior cases, district courts in the Eighth Circuit and elsewhere have regularly exhibited a great deal of caution when deciding whether to certify national collectives, often refusing to do so based solely on the affidavit of a singular plaintiff. In *McClendon v. Schlumberger Technology Corporation*, a field technician employed by an oil and gas servicing company was denied a motion for conditional national class certification because the affidavit in support failed to specify how they were aware that employees outside of the plaintiff's geographic region were similarly situated. Case No. 4:15-cv-752 JLH, 2016 WL 3911897, at *3 (E.D. Ark. July 15, 2016). Likewise, in *Settles v. General Electric*, the district court declined to certify a national collective based on three affidavits because they failed to establish "that the employees were victims of a single nationwide decision, policy, or plan on the part of GE." Case No. 12-00602-CV-W-BP, 2013 WL 12143084, at *5 (W.D. Mo. Feb. 19, 2013).

However, Mr. Looney's declaration provides very specific allegations that speak to his personal knowledge that the allegedly illegal payment policy was indeed implemented on a company-wide level. Specifically, this policy's existence is supported by Mr. Looney's claims to have frequently received emails addressed to the entire team of field technicians employed

throughout the country by Weco from Mr. Wainwright himself discussing the technicians' pay, their job duties, and the company's payment policies. Mr. Looney further asserts that, in certain emails, Mr. Wainwright would respond to individual's complaints or questions about pay policy by replying to all field technicians in order to address thoroughly the issue across the entire company's fleet of technicians (Dkt. No. 11-7, ¶ 8). This allegation substantiates Mr. Looney's claims of personal knowledge regarding a common policy applicable to a national class, and it provides a colorable basis on which the Court can conclude that all hourly-paid field technicians employed by Weco during the time specified are similarly situated.

In his declaration, Mr. Looney has asserted his personal belief that the policies or decisions causing him to suffer a loss were applied across the company's entire fleet of field technicians. This belief is supported by much more specific knowledge than mere speculation and conjecture, which usually is rejected as grounds for a certification of a national collective. Mr. Looney stated that, as a service technician, he frequently worked with other technicians who mentioned experiencing these same issues during their time with Weco and that he regularly received emails addressed to all field technicians employed by Weco written directly by Mr. Wainwright as the company's owner which specifically discussed and answered questions regarding the alleged common payment plans and policies applicable to the company's entire team of field technicians. The Court concludes that this evidence is specific enough to meet the relatively low burden of proof required at this stage.

For the reasons provided, Mr. Looney's proposed class is conditionally certified.

### B.  Notice Stage Of Conditional Certification

In his motion for conditional certification of collective action, Mr. Looney provided several documents plaintiffs propose to send out during the notice stage of the conditional certification of a collective action (Dkt. No. 11).  They are:

1) Proposed Notice of Right to Join Lawsuit;
2) Proposed Consent to Join Collective Action for mailed submissions;
3) Proposed Text of Electronic Transmission
4) Proposed Consent to Join Collective Action for electronic submissions; and
5) Proposed Reminder Postcard.

Mr. Looney requests that the Court ratify these documents and the following notice process as it pertains to potential opt-in plaintiffs:  Mr. Looney would send notice and consent forms to potential opt-in plaintiffs, *via* the U.S. Postal Service as well as through email, who would then be given 90 days to declare their consent to opt-in if they so desired.  Any emails sent would include the proposed text of electronic transmission.  Furthermore, Mr. Looney requests that the Court certify the form and content of the proposed second follow-up notice and allow it to be sent to members of the collective *via* U.S. Postal Service or email 30 days after the initial notice is sent. Mr. Looney also requests that the Court order defendants to provide plaintiffs with names, last known mailing address, and all email addresses known to defendants belonging to members of the collective in an electronically manipulable format such as Microsoft Word or Excel within seven days of the issuing of this Order and that, if the Court elects to extend this time period, the statute of limitations should be likewise tolled (Dkt. No. 12, at 9–16).

Defendants object to several portions of Mr. Looney's proposed notice procedures.  They contend that the proposals are overly coercive and burdensome, arguing that a single notice by mail and none by email is appropriate, that a reminder notice is redundant and confusing, that a 60 day opt-in period is more appropriate than the 90 day period proposed by Mr. Looney, that Mr.

10

Looney is not entitled to receive any information about potential opt-in plaintiffs in an electronically manipulable format, and that Mr. Looney should not be entitled to receive this information within seven days after certification being granted (Dkt. No. 13, at 13-18).

This Court, as well as the attorneys who practice before it, "have a responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation." *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 267 (D. Minn. 1991).  The Court, however, has routinely ordered that notice be sent *via* regular U.S. Mail *and* email to all potential opt-in plaintiffs in FLSA cases.  *See*, *e.g.*, *Bonds v. Langston Companies, Inc.*, Case No. 3:18-cv-00189-KGB, 2019 WL 4673569, at *4 (E.D. Ark. Sept. 24, 2019); *Hicks v. Lindsey Mgmt. Co.*, Case No. 3:18-cv-00133-KGB, 2019 WL 542973, at *4 (E.D. Ark. Feb. 11, 2019); *McChesney*, 2019 WL 118408, at *6.  Besides being common practice, distributing notice *via* direct mail and email "advances the remedial purpose of the FLSA, because service of the notice by two separate methods increases the likelihood that all potential opt-in plaintiffs will receive notice of the lawsuit, and of their opportunity to participate." *Atkinson v. TeleTech Holdings, Inc.*, Case No. 3:14-cv-253, 2015 WL 853234, at *5 (S.D. Ohio Feb. 26, 2015); *see also Irvine v. Destination Wild Dunes Mgmt., Inc.*, 132 F. Supp. 3d 707, 711 (D.S.C. 2015) (approving notice *via* regular mail, email, and text messaging to putative class members, reasoning that "[t]his has become a much more mobile society with one's email address and cell phone number serving as the most consistent and reliable method of communication"). To that end, the Court will allow Mr. Looney to provide potential opt-in plaintiffs with notice *via* U.S. Mail and email.  Mr. Looney may send one written notice and consent-to-join form to potential opt-in plaintiffs via U.S. Mail, and he may also send the same documents via email. Additionally, 30 days after the sending of these forms he may send one follow-up notice via either

U.S. Mail or email.  Mr. Looney shall not send any potential plaintiffs follow-up notices using both U.S. Mail and email.

With respect to the duration of the opt-in period, this Court has regularly approved motions requesting a 90-day opt-in period without issue.  Defendants rest their objection on the basis that a period of this length is a disservice to judicial efficiency and cite some cases in which a 60-day opt-in period had been accepted (Dkt. No. 13, at 16).  However Mr. Looney is alleging a time period which has been employed by this Court and many others without issue, and he has additionally articulated concerns that many of the potential collective members have changed addresses or phone numbers since they were employed by defendants, necessitating time to locate them (Dkt. No. 12, at 15).  The Court considers a 90-day opt-in duration reasonable and is aware of no extenuating circumstances requiring the period be shortened.  For these reasons, the Court grants a 90-day opt-in period.

Mr. Looney requests that defendants provide him with the names, email addresses, and last known physical addresses for the members of the conditionally certified class within seven days of the issuance of this Order and that they do so in "an electronically manipulable format."  The Court will not hold defendants to Mr. Looney's requested seven day timeline to turn over the names and contact information of similarly situated field technicians.  This task may require inspection of years of employment records; it would be unreasonable to require defendants to complete this process and turn over its findings to Mr. Looney within one week of the issuance of this Order.  Defendants request "[a]t least fourteen (14) days to produce the requested documentation" (Dkt. No. 123, at 18).  The Court grants that request and directs defendants to provide this information to plaintiffs within 21 days from the entry of this Order.

The Court also overrules defendants' objection to providing Mr. Looney with the relevant contact information in "an electronically manipulable format" and directs defendants to comply with this request.

Accordingly, within 21 days of the issuance of this Order, defendants shall provide to Mr. Looney all known names, email addresses, and last known physical addresses for all hourly field technicians under their employ at any time since March 1, 2018, in an electronically manipulable format.  Mr. Looney will then be permitted to both mail and email the members of this collective notice of their right to join the collective action and a consent form to opt-into the action if they so desire.  Mr. Looney is permitted to send each potential plaintiff one reminder notice of the action 30 days after sending the initial notice, either through email or the U.S. Postal Service but not through both.  The collective will have 90 days to opt-in and join the conditionally certified collective action.

### IV.     Conclusion

For the foregoing reasons, the Court grants, in part, and denies, in part, Mr. Looney's motion for conditional certification, for approval and distribution of notice, and for disclosure of contact information (Dkt. No. 11).

It is so ordered this 16th day of September, 2022.

_____
Kristine G. Baker
United States District Judge